John N. Zarian, USB No. 13454
Kennedy K. Luvai, USB No. 14559
PARSONS BEHLE & LATIMER
960 Broadway Ave., Ste. 250
Boise, Idaho 83706
Telephone:  (208) 562-4900
Facsimile:   (208) 562-4901
Email:     jzarian@parsonsbehle.com
           kluvai@parsonsbehle.com

Attorneys for Defendants Noble Software
Group LLC, Mark Winterman, Aaron Picton,
Bryan Parke, Troy Parke, Jonna Koehn,
Colby Brown, Diana Coates and Bret Coppess

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| ALLVEST INFORMATION SERVICES, INC. doing business as ASSESSMENTS.COM, a Washington corporation; GROWING FUTURES LLC, A Utah limited liability company,<br><br>                    Plaintiffs,<br><br>v.<br><br>NOBLE SOFTWARE GROUP LLC, a Washington limited liability company; MARK WINTERMAN, an individual; AARON PICTON, an individual; BRYAN PARKE, an individual, TROY PARKE, an individual; JONNA KOEHN, an individual; COLBY BROWN, an individual; DIANA COATES, an individual; BRET COPPESS, an individual,<br><br>                    Defendants. | Case No. 11:13-cv-00161-DAK<br><br>Hon. Dale A. Kimball<br><br>**DEFENDANTS' PARTIAL MOTION TO DISMISS UNDER FRCP 12(b)(6)** |

4826-3754-4471.1

## MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants Noble Software Group LLC ("Noble"), Mark Winterman, Aaron Picton, Bryan Parke, Troy Parke, Jonna Koehn, Colby Brown, Diana Coates and Bret Coppes (together, "Defendants"), by and through their undersigned counsel of record, move to dismiss <u>as to all of the Defendants</u> certain of the claims asserted in the complaint filed by plaintiffs Allvest Information Systems, Inc. and Growing Futures, LLC (together, "Plaintiffs"), namely, (i) the **Third** Claim for Relief for Common Law Misappropriation of Trade Secrets, (ii) the **Fourth** Claim for Relief for Breach of Duty of Loyalty; (iii) portions of the **Third** [*sic*][1] Claim for Relief for Tortious Interference with Corporate Opportunities; (iv) portions of the **Sixth** Claim for Relief for Civil Conspiracy; and, (v) portions of the **Seventh** Claim for Relief for Conversion, because they fail to state a claim upon which relief can be granted in that these claims are preempted by the Utah Uniform Trade Secrets Act (the "UTSA").

Furthermore, Defendants move to dismiss <u>as to as to all of the Defendants</u> certain of the claims asserted in the complaint, namely, (i) the **Eighth** Claim for Relief for Statutory Unfair Competition under Utah Statute; (ii) the **Ninth** Claim for Relief for Common Law Unfair Competition, and, (iii) portions of the **Seventh** Claim for Relief for Conversion (to the extent it refers to copyrightable subject matter), on the grounds that they fail to state a claim upon which relief can be granted because each of these claims is preempted by the Copyright Act.

In addition, Defendants move to dismiss <u>as to defendant Noble,</u> (i) the **First** Claim for Relief for Breach of Contract, the **Fourth** Claim for Relief for Breach of Duty of Loyalty, and (ii) the **Fifth** Claim for Relief for Breach of Duty of Care, for failure to state a claim upon which relief can

---

[1] Plaintiffs' complaint includes two (consecutive) claims for relief labeled as the "Third" claim.

**DEFENDANTS' PARTIAL MOTION TO DISMISS UNDER FRCP 12(b)(6)** - 1
4826-3754-4471.1

granted.  Among other things, as discussed below, Plaintiffs do not allege anywhere in the Complaint that they had any express or implied contractual relationship with Noble.

Finally, Defendants move to dismiss <u>as to defendants Jonna Koehn, Troy Parke and Bret Coppes</u>, the **First** Claim for Relief for Breach of Contract, for failure to state a claim upon which relief can be granted, because Plaintiffs do not allege that they were parties to the alleged contract.

In support of the foregoing motion, Defendants rely upon his motion, the memorandum of points and authorities to follow, the pleadings and records on file in this matter, all matters of which the Court may take judicial notice, such matters as may be presented by counsel at or prior to any hearing, and upon such other evidence or argument as may be presented to or considered by the Court prior to any ruling on this motion.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.   INTRODUCTION**

Plaintiffs Allvest Information Systems, Inc. d/b/a Assessments.Com ("ADC")[2] and Growing Futures LLC ("Growing Futures") (together, "Plaintiffs") have sought to buoy up their complaint with provocative accusations of alleged misconduct by the named defendants.  Cutting through the rhetoric, however, this lawsuit rests on Plaintiffs' manifold assertions of an ownership interest in certain computer software actually developed and owned by Defendants.  Plaintiffs' entire case rises and falls on this (disputed and ultimately unfounded) claim of ownership.

Thus, the gravamen of this lawsuit is ostensibly the allegation that Defendants misappropriated or otherwise misused alleged trade secrets and confidential information to Plaintiffs' detriment.  Even so, in later stages of this litigation, the evidence will show that Plaintiffs

---

[2] Assessments.Com (*i.e.* Assessments Dot Com) has been and continues to be widely referred to by the parties involved as "ADC," and has been referred to as such during the course of this litigation.

**DEFENDANTS' PARTIAL MOTION TO DISMISS UNDER FRCP 12(b)(6)** - 2
4826-3754-4471.1

instituted this lawsuit in a transparent effort to distract from the criminal conduct of ADC's own troubled president, and to interfere with Defendants' ability to pursue lawful business prospects.

Presently, by this motion and pursuant to Rule 12(b)(6), Defendants seek to dismiss nine of the *ten* claims for relief asserted in the operative complaint, on four distinct grounds.

First, Plaintiffs cannot state a claim as to any of the Defendants for common law misappropriation of trade secrets (third claim for relief) or breach of duty of loyalty (fourth claim for relief), because those claims are preempted by the Utah Uniform Trade Secrets Act, which displaces a range of civil remedies for misappropriation of trade secrets. Similarly, portions of Plaintiffs' claims for tortious interference with corporate opportunities (third [*sic*] claim for relief), civil conspiracy (sixth claim for relief), and conversion (seventh claim for relief) are also preempted by the Utah Trade Secrets Act.

Second, Plaintiffs' state law claims for statutory unfair competition (eighth claim for relief) and common law unfair competition (ninth claim for relief) are preempted as to all of the Defendants by the Copyright Act, because they seek to impose liability for acts exclusively within the province of federal law. Plaintiffs' conversion claim (seventh claim for relief) is preempted for the same reasons to the extent it relies upon a theory of conversion of copyrightable subject matter.

Third, Plaintiff's claims for breach of contract (first claim for relief), breach of duty of loyalty (fourth claim for relief) and breach of duty of care (fifth claim for relief) fail to state a claim upon which relief can be granted as to defendant Noble Software Group LLC ("Noble"), because Plaintiffs do not (and cannot) allege anywhere in the Complaint that they had an express or implied contractual relationship with Noble.

**DEFENDANTS' PARTIAL MOTION TO DISMISS UNDER FRCP 12(b)(6)** - 3
4826-3754-4471.1

Fourth, and finally, Defendants also seek to dismiss the claim for breach of contract (first claim for relief) as to defendants Jonna Koehn, Troy Parke and Bret Coppes, because Plaintiffs do not allege that they were parties to the relevant contract alleged in the complaint.

## II.  BACKGROUND

Plaintiffs initiated this action in the District Court for the Second Judicial District of the State of Utah, in and for the County of Davis, Bountiful Division, (the "State Court") on October 29, 2013. According to the complaint, plaintiff ADC is a provider of "software solutions to probation and law enforcement agencies that are used to assess and monitor adult and juvenile offenders on probation." [Complaint, ¶ 1]. Plaintiffs allege that Dean Andreasen is the appointed receiver of plaintiff Growing Futures pursuant to an order entered by the State Court in a separate divorce action involving one of ADC's principals, and further assert that "Growing Futures holds an interest in ADC's intellectual property and trade secrets." [*Id*., ¶ 2]

Plaintiffs have sued numerous individuals who, at one point or another, were affiliated with ADC, namely, Mark Winterman, Aaron Picton, Bryan Parke, Troy Parke, Jonna Koehn, Colby Brown, Diana Coates (the "Individual Defendants") as well as Noble – the company for which the Individual Defendants are presently working for or with which they are otherwise affiliated. Noble provides software and training solutions that improve risk and needs assessments for youth and adults under the charge of corrections and probation departments across the country.

Plaintiffs' Complaint purports to assert ten[3] claims for relief against the Individual Defendants and Nobel (together, "Defendants"), all under Utah state law, namely, (i) breach of contract, (ii) statutory misappropriation of trade secrets, (iii) common law misappropriation of trade secrets, (iv) tortious interference with corporate opportunities, (v) breach of duty of loyalty, (vi)

---

[3] In their Complaint, Plaintiffs erroneously include two claims for relief labeled as the "Third Claim for Relief." [Complaint, ¶¶ 110-24].

**DEFENDANTS' PARTIAL MOTION TO DISMISS UNDER FRCP 12(b)(6)** - 4
4826-3754-4471.1

breach of duty of care and diligence, (vii) civil conspiracy, (viii) conversion, (ix) statutory unfair competition, and (x) common law unfair competition.

In sweeping fashion, Plaintiffs claim that ADC owns categorical "trade secrets" in certain amorphous "evidence-based assessment and monitoring software," including "the user interface, the stored procedures and web services, the proprietary database, and the data and forms underlying these processes and ADC's subscription schedule," as well as other undefined and unidentified "confidential and proprietary information." [*Id*., ¶¶ 15-19].[4]

As a first claim for relief, Plaintiffs purport to assert a breach of "contract" claim, but they do not even attach any such agreement to the Complaint or, for that matter, specifically identify any agreement at issue by title and/or date of execution. Instead, Plaintiffs fall back on vague (and false) allegations regarding the alleged existence of an agreement, and its purported breach. [*See id*., at ¶ 33]. In one way or another, substantially all of Plaintiffs' other claims rely on the alleged contractual duties set forth in the "agreement" referenced in the first claim for relief. [*Id*., ¶¶ 93-159].

With similar lassitude, Plaintiffs assert an unfair competition claim based on the factually unsupported allegation that "[D]efendants have infringed on ADC's trademarks and trade name...," without alleging any facts regarding the nature, scope, ownership, validity or infringement by Defendants of any of ADC's alleged "trademarks." [*Id*., ¶¶ 152, 157].

As noted above, this case was commenced in State Court. On November 14, 2013, however, Defendants timely and properly removed this action to this federal court. [Dkt. No. 2 ("Notice of Removal")]. As set forth in the Notice of Removal, Plaintiffs' disputed allegations that form the bases for claims asserted under Utah state law actually arise under the Copyright Act, thus providing this Court with original jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction).

---

[4] In truth, any ownership of intellectual property interests in the computer software at issue rests with, and has always rested with, Defendants.

For the reasons set forth herein, pursuant to Rule 12(b)(6), nine of the *ten* claims for relief asserted by Plaintiff should now be dismissed, in whole or in part.

### III.     PLEADING STANDARDS

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A district court must dismiss a complaint under Fed. R. Civ. P. 12(b)(6) if it fails to state such a claim. *See*, *e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Defendant as the nonmoving party." *1-800 Contacts, Inc. v. Memorial Eye, P.A.*, Case No. 2:08-CV-983, 2010 WL 988524, at *2 (D. Utah Mar. 15, 2010) (unpublished). This tenet does not apply to legal conclusions, however, and "mere 'labels and conclusions' . . . will not suffice." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Nor must the court accept as true "allegations that contradict facts that may be judicially noticed by the court." *Seiko Epson Corp. v. Glory South Software Mfg., Inc.*, 684 F. Supp. 2d 1231, 1236 (D. Or. 2010). At the motion to dismiss stage, the court must "assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted," and the court "need not accept conclusory allegations without supporting factual averments." *Id.*

The United States Supreme Court has further held that, in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard "is not akin to a probability requirement but it asks for more than a sheer possibility that a Defendant has acted unlawfully." *Id*. To survive a motion to dismiss, a complaint or counterclaim must "offer

sufficient factual allegations to 'raise a right to relief above the speculative level.'" *Kansas Penn Gaming*, 656 F.3d at 1214 (quoting *Twombly*, 550 U.S. at 55).  As explained by the Supreme Court in *Iqbal*, a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## IV.  ARGUMENT

### A.  PLAINTIFFS' THIRD AND FOURTH CLAIMS FOR RELIEF AND PORTIONS OF THEIR THIRD [*Sic*], SIXTH AND SEVENTH CLAIMS FOR RELIEF ARE PREEMPTED BY THE UTAH UNIFORM TRADE SECRETS ACT.

Plaintiffs' claims for common law misappropriation of trade secrets (third claim for relief) and breach of duty of loyalty (fourth claim for relief), as well as significant portions of their claims for tortious interference with corporate opportunities (third [*sic*] claim for relief), civil conspiracy (sixth claim for relief) and conversion (seventh claim for relief), are *preempted* by the Utah Uniform Trade Secrets Act (the "UTSA").  The UTSA provides, in relevant part:

> (1) Except as provided in Subsection (2), this chapter displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.
>
> (2) This chapter does not affect:
> (a) contractual remedies, whether or not based upon misappropriation of a trade secret;
> (b) other civil remedies that are not based upon misappropriation of a trade secret; or
> (c) criminal remedies, whether or not based upon misappropriation of a trade secret.

Utah Code Ann. § 13-24-8 ("Section 13-24-8").

The purpose of the foregoing provision is "to preserve a single tort action under state law for misappropriation of a trade secret." *CDC Restoration & Const. Co., LC v. Tradesmen Contractors, LLC*, 274 P.3d 317, 331 (Utah.App. 2012) (quoting *Mortgage Specialists, Inc. v. Davey*, 904 A.2d

**DEFENDANTS' PARTIAL MOTION TO DISMISS UNDER FRCP 12(b)(6)** - 7

652, 663 (N.H. 2006)). Accordingly, a claim is preempted to the extent that it is based on factual allegations supporting a misappropriation of trade secrets or otherwise confidential information. *Id.*

Furthermore, under the foregoing standard, "if proof of a non-UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective o[f] whatever surplus elements of proof were necessary to establish it." *Id.* (quoting *Hauck Mfg. Co. v. Astec Indus., Inc.,* 375 F.Supp.2d 649, 658 (E.D.Tenn. 2004)).

In this case, Plaintiffs' third claim for relief for common law misappropriation of trade secrets is on its face a non-UTSA claim that purports to seek relief for alleged misappropriation of claimed trade secrets. [Complaint, ¶¶ 110-117]. Accordingly, based on the clear language of Section 13-24-8, this common law claim is *preempted in its entirety* and must be dismissed. *See* Utah Code Ann. § 13-24-8; *see also CDC Restoration*, 274 P.3d at 330 ("In light of the purpose of the UTSA and the statutory mandate, which dictates that we construe it 'to uniform [trade secret] law . . . among states enacting it, *see* Utah Code Ann. § 13-24-9, we join the majority of courts that have addressed the issue and hold that the UTSA preempts claims based on the unauthorized use of information, irrespective of whether that information meets the statutory definition of trade secret.").

Plaintiffs' fourth claim for relief for breach of duty of loyalty claim is likewise *completely preempted* by the UTSA. In purporting to state this claim, Plaintiffs allege that "Defendants owed ADC a fiduciary duty to act toward ADC fairly, honestly, in good faith and with undivided loyalty with respect to the confidential and proprietary information to which Defendants were given access," that Defendants remained obligated to maintain the confidentiality of ADC's claimed trade secrets and other proprietary or confidential information, and that Defendants were obligated to refrain from disclosing or misappropriating the claimed trade dress in a manner that interfered with ADC's economic relationships. [Complaint, ¶ 126]. Therefore, inasmuch as this claim is based on a theory

of "misappropriation or misuse of [ADC's] confidential information [and trade secrets]," the claim is preempted *in its entirety* and must be dismissed. *See CDC Restoration*, 274 P.3d at 331-32 (holding that a breach of fiduciary duty claim was preempted in its entirety where an examination of the factual allegations underlying the claim showed that it was based solely on theories of misappropriation or misuse of confidential information).

Not only are the third and fourth claims for relief completely preempted, but other claims for relief are preempted in part to the extent that they are based on theories of alleged misappropriation or misuse of confidential information or trade secrets. In particular, Plaintiffs' claims for interference with corporate opportunities (third [*sic*] claim for relief), civil conspiracy (sixth claim for relief) and conversion (seventh claim for relief) are preempted, at least in part, by the UTSA.

Plaintiffs' third [*sic*] claim for interference with corporate opportunities is predicated on the allegation that Defendants interfered with certain of ADC's business relations with its customers by "offering to provide maintenance services that Noble was not authorized to provide,[5] and offering to provide services that rely on ADC's *trade secrets*." [Complaint, ¶ 121 (emphasis supplied)]. To the extent this interference claim relies upon a theory of misuse or misappropriation of confidential information or trade secrets, it is preempted. *See CDC Restoration*, 274 P.3d at 332 (claim for intentional interference with economic relations preempted by the UTSA).

Plaintiffs' sixth claim for relief for civil conspiracy also rests on allegations that trade secrets were misappropriated, and thereby impermissibly purports to assert a separate state law tort claim for misappropriation of trade secrets. In particular, Plaintiffs allege that Defendants "combined together to misappropriate ADC's trade secrets and other confidential information" and "to breach their confidentiality obligations." [Complaint, ¶ 142]. Plaintiffs also allege that Defendants "conspired"

---

[5] Presumably by allegedly using ADC's purported confidential information and/or trade secrets.

**DEFENDANTS' PARTIAL MOTION TO DISMISS UNDER FRCP 12(b)(6)** - 9
4826-3754-4471.1

to "breach their duties of loyalty," an allegation that, as noted above, is predicated on the notion that the Individual Defendants owed ADC a duty to maintain the confidentiality of and not disclose certain alleged trade secrets. [*Id.*, ¶ 126]. Thus, this claim is preempted, at least in part. *CDC Restoration*, 274 P.3d at 332 (concluding that a civil conspiracy claim was displaced by the UTSA because it was based on the same factual allegations as a misappropriation of trade secrets claim).

Finally, in support of the seventh claim for relief for conversion, Plaintiffs allege a conversion of "proprietary files" and that Defendants "otherwise misappropriat[ed] ADC's property." [*Id.*, ¶ 150]. To the extent Plaintiffs have asserted conversion of the purported trade secrets allegedly misappropriated by Defendants, this claim too is preempted by the UTSA. *See CDC Restoration*, 274 P.3d at 332 (concluding that state law claims for breach of fiduciary duty, intentional interference and civil conspiracy preempted the UTSA because they were based on the same factual allegations as a misappropriation of trade secrets claim).

In sum, the claims for relief discussed above are based on the same factual allegations supporting a misappropriation of trade secrets, and they expressly seek relief for Defendants' alleged wrongful disclosure and/or misuse of Plaintiffs' purported trade secrets. Under the plain language of Section 13-24-8 and the authority of the *CDC Restoration* decision from the Utah Court of Appeals, these claims should be dismissed and/or appropriately narrowed to exclude any and all allegations of wrongful disclosure and/or misuse of trade secrets.

### B. PLAINTIFFS' EIGHTH AND NINTH CLAIMS FOR RELIEF AND PORTIONS OF THE SEVENTH CLAIM FOR RELIEF ARE PREEMPTED BY THE COPYRIGHT ACT.

Section 301 of the Copyright Act preempts enforcement of state legal or equitable rights that are substantively equivalent to federal copyright infringement claims. 17 U.S.C. § 301(a); *Harold Stores, Inc. v. Dillard Dept. Stores, Inc.*, 82 F.3d 1533, 1542-43 (10th Cir. 1996) (*citing Gates*

*Rubber Co. v. Bando Chem. Indust. Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993));  *Ehat v. Tanner*, 780 F.2d 876, 877-878 (10th Cir. 1985). Courts employ a two-pronged analysis to determine equivalence. *Gates Rubber Co. v. Bando Chem. Indust. Ltd.*, 9 F.3d at 847.  First, the court determines if the work is "within the scope of the subject matter of copyright as specified in 17 U.S.C. §§ 102 and 103." *Ehat*, 780 F.2d at 878.  In other words, the court asks whether it is a work of authorship, such as a literary work, musical work, or dramatic work, fixed in a tangible medium of expression.[6] *Id.*

Second, if the work is within the scope of copyright, then the court must determine whether the state law rights are equivalent to any exclusive rights granted in 17 U.S.C. § 106, including the rights to publish, distribute, and make derivative copies of the work. *Harolds Stores*, 82 F.3d at 1542-43 (citing *Gates Rubber Co.*, 9 F.3d at 847).

In determining whether a state law provides equivalent protection, the court must determine if the cause of action contains a qualitative element "beyond mere copying, preparation of derivative works, performance, distribution or display." *Harolds Stores, Inc.*, 82 F.3d at 1543 (*citing Gates Rubber Co.*, 9 F.3d at 847).  The extra element must "change[] the nature of the action so that it is qualitatively different from a copyright infringement claim." *Id*.  This requires looking beyond the label given to a cause of action and focusing on the legal right or interest plaintiff is trying to protect, the theories employed to protect it, and the rights plaintiff is attempting to enforce. *See Gates Rubber Co.*, 9 F.3d at 847-48.

---

[6] Works of authorship include the following categories: (1) literary works; (2) musical works, including any accompanying words; (3) dramatic works, including any accompanying music; (4) pantomimes and choreographic works; (5) pictorial, graphic, and sculptural works; (6) motion pictures and other audiovisual works; (7) sound recordings; and, (8) architectural works; as well as compilations and derivative works.  17 U.S.C. §§ 102 and 103.

In this case, for the reasons set forth below, Plaintiffs' eighth and ninth claims for relief, and at least portions of the seventh claim for relief, are preempted by the Copyright Act.

> **1.  Plaintiffs' Eighth and Ninth Claims for Unfair Competition Do Not Contain any Qualitative Extra Elements, and are Thus Preempted by the Copyright Act.**

An unfair competition claim which seeks to impose liability for the acts of copying and distribution of works within the scope of copyright is preempted. *Ehat*, 780 F.2d at 878-79 (holding that a plaintiff's unfair competition claims under Utah law were preempted because they alleged damages based on copying and sales of copyrightable material).

In determining whether an unfair competition claim is preempted, courts must analyze the theory of unfair competition being asserted to decide if it "contains a qualitatively different extra element that distinguishes it from a copyright claim." *Kindergartners Count, Inc. v. Demoulin et al.*, 171 F.Supp.2d 1183, 1191 (D. Kan. 2001). Not all unfair competition causes of action are preempted, but courts have routinely held that unfair competition claims are preempted. *Id.* (*citing Ehat*, 780 F.2d at 878; *Kodadek v. MTV Networks*, 152 F.3d 1209 (9th Cir. 1998)).

Furthermore, unfair competition claims are routinely preempted in cases where it is alleged that a defendant has reproduced and distributed a work as its own, when, in fact, the work allegedly belongs to the plaintiff. The *Kindergarteners Count* case sets out the formulaic representation of this type of preempted claim: "If B is selling B's products and representing to the public that they are B's products, a[n unfair competition claim] by A that B's products replicate A's is disguised as a copyright infringement claiming and is preempted." *Id.* (*quoting Kodadek*, 152 F.3d at 1213 (*citing Nimmer on Copyrights*, § 1.0[B][1][e] at 1-24 n. 110)).

A classic illustration of such a preempted unfair competition claim can be found in *Xerox Corp. v. Apple Computer, Inc.*, 734 F.Supp. 1542, 1550-51 (N.D. Cal. 1990). In *Xerox*, it was

alleged that Apple was selling, as its own, Xerox's computer software. Xerox filed suit, alleging, *inter alia*, unfair competition. In ruling that Xerox's claim was preempted, the Court stated:

> The weakness in this claim lies in a misunderstanding of actionable "confusion," . . . This confusion must be of a specific kind: the public must be misled into thinking that the Defendant's product is actually the plaintiff's. In other words, the Defendant must be guilty of "passing off" his product as the plaintiff's. *Fisher v. Dees,* 794 F.2d 432, 440 (9th Cir.1986). This is not the sort of confusion Xerox alleges. Just as the unsuccessful plaintiff in *Fisher,* Xerox alleges that Apple is selling Xerox' work as its own. Xerox' theory, thus, is based upon the premise that Apple's products incorporate elements copyrighted by Xerox and misappropriated by Apple-unlawfully copied in violation of § 103(a) of the Copyright Act. This theory is the opposite of "passing off" and must necessarily be viewed as part of Xerox' copyright claim. Any such misappropriation must be redressed, if at all, under federal law.

*Xerox Corp.*, 734 F.Supp. at 1550.

Although the Tenth Circuit has apparently not expressly ruled on the preemption of an unfair competition claim under the exact circumstances at issue here, the opinions in *Kindergarteners Count* (from the District of Kansas) and *Xerox* (from the Northern District of California) are clearly in harmony with opinions from courts nationwide, recognizing that the type of unfair competition pled in this case is preempted by copyright law. *See, e.g., Integrative Nutrition, Inc. v. Academy of Healing Nutrition*, 476 F.Supp.2d 291, 297 (S.D.N.Y. 2007) (*quoting Nimmer on Copyrights*, § 1.0[B][1][e]); *Patriot Homes, Inc. v. Forest River Hous., Inc.*, 489 F.Supp.2d 865, 875 (D. Ind. 2007); *Aagard v. Palomar Builders*, Inc., 344 F.Supp.2d 1211, 1218 (E.D.Cal. 2004); *Schiffer Publishing, Ltd. v. Chronicle Books, LLC*, 350 F.Supp.2d 613, 619-620 (E.D.Pa. 2004); *Higher Gear Group, Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F.Supp.2d 953, 959 (N.D.Ill. 2002); *CoStar Group Inc. v. LoopNet, Inc.*, 164 F.Supp.2d 688, 714 (D.Md. 2001), *aff'd*, 373 F.3d 544 (4th Cir. 2004); *Int'l Kitchen Exhaust Cleaning Ass'n v. Power Washers of North Am.*, 81 F.Supp.2d 70, 73-74 (D.D.C. 2000); *Kregos v. Associated Press*, 3 F.3d 656, 666 (2d Cir. 1993).

Here, as in the *Xerox* and *Kindergartners Count* cases, Plaintiffs' statutory unfair competition claim (eighth claim for relief) and their common law unfair competition claim (ninth claim for relief) provide no additional qualitative element outside of the alleged copying and distribution of copyrightable material. Without any factual predicate (and perhaps seeking to avoid pleading facts that would confirm that this claim arises under copyright law), Plaintiffs' theory of unfair competition appears to rests on the absurd allegation that Defendants "violated ADC's software licenses." [Complaint, ¶¶ 152, 157]. However, nowhere in the tedious 32-page Complaint do Plaintiffs allege that Defendants, or any of them, ever entered into (much less breached) any software license agreements with ADC.

In truth, Plaintiffs have asserted nothing more than a bald claim to ADC's ownership of the software incorporating claimed trade secrets, coupled with an allegation that Defendants are reproducing and/or selling the same as Noble. [*See e.g. Id.*, ¶ 81 (alleging that "[i]n other instances Noble has entered new [*sic*] contracts to maintain ADC's software and databases . . .")]. As in *Xerox*, Plaintiffs allege nothing more than reproduction and sale of "software" as Noble's own.

To be sure, Plaintiffs also allege that Defendants "infringed on ADC's trademark and trade name," [*Id.*, ¶¶ 152, 157], but that allegation is a red herring. Plaintiffs do not purport to state a claim for trademark infringement, and they do not plead any factual allegations concerning the nature or scope of infringement of any alleged trademarks (from which this Court might infer that Defendants are liable for trademark infringement). Plaintiffs' bare allegations regarding purported infringement of "ADC's trademarks and trade name" are the very kinds of insufficient "labels" and "conclusions" that the Tenth Circuit found impermissible in *Kansas Penn Gaming*.

Accordingly, Plaintiffs' eighth and ninth claims for relief for unfair competition are preempted by the Copyright Act and should be dismissed in their entirety.

      **2.**      **To the Extent Plaintiffs' Seventh Claim for Conversion Relies Upon Conversion of Copyrightable Subject Matter, it is Also Preempted by the Copyright Act.**

As discussed above, under Section 301, a state common law or statutory claim is preempted by the Copyright Act if: (i) the work is within the scope of the 'subject matter of copyright' as specified in 17 U.S.C. §§ 102, 103; and (ii) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106. *See Gates Rubber,* 9 F.3d at 84; *Ehat,* 780 F.2d at 878.

Here, as part of the conversion claim, Plaintiffs allege that ADC "maintained a valid ownership interest in the Subscription Agreement, ADC's Training Materials, ADC's Marketing Materials, ADC's corporate documents and files . . ." [Complaint, ¶ 147]. Significantly, Plaintiffs neither define nor identify what they allege constitutes the "Subscription Agreement," "Training Materials," "Marketing Materials," and "corporate documents and files." Nevertheless, these materials satisfy the first prong of preemption, since the referenced works are necessarily fixed in tangible media of expression and are thus copyrightable subject matter. *See* 17 U.S.C. § 102.

As for the second prong of preemption, the Copyright Act expressly provides that "the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies . . . . ; (2) to prepare derivative works based upon the copyrighted work ..." 17 U.S.C. § 106. Therefore, to the extent Plaintiffs' conversion claim relies upon a theory that Defendants reproduced, published or distributed the "Subscription Agreement," "Training Materials," "Marketing Materials," and "corporate documents and files," that claim for relief for conversion is preempted by the Copyright Act. *Bartholomew v. Rodale Press, Inc.*, No. 2:00-cv-742c, 2001 WL 1044914 at *3 (D.Utah. Sept. 7, 2001) (citing *Ehat*, 780 F.2d at 878).

C. **PLAINTIFFS' FIRST, FOURTH AND FIFTH CLAIMS FOR RELIEF DO NOT STATE ANY CLAIMS FOR RELIEF AGAINST NOBLE.**

Plaintiffs purport to assert claims for breach of contract (first claim for relief), breach of duty of loyalty (fourth claim for relief), and breach of duty of care (fifth claim for relief) against Noble. However, the Complaint does not plead any factual allegations in support of these claims.

The elements of a breach of contract claim are "(1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Blair v. Axiom Design, LLC*, 20 P.3d 388, 392 (Utah 2001). In the Complaint, Plaintiffs do not allege anywhere had any express or implied contractual relationship with Noble. This defect is fatal to any breach of contract claim against Noble, since Plaintiffs cannot state a claim for breach of contract against Noble without first alleging the actual existence of a contract with Noble.

Plaintiffs further overreach in their purported assertion of claims for breach of duty of loyalty (fourth claim for relief) and breach of duty of care (fifth claim for relief) against Noble. Indeed, as expressly pled, these claims extend only to the *Individual Defendants*, not Noble. [Complaint, ¶¶ 126-27, 136 (alleging that "[a]s officers, employees, and agents of ADC" Defendants owed certain duties to ADC)]. At no point does the Complaint assert (because it cannot) that Noble, a corporate entity, was in any way an "officer[], employee[] or agent[]" owing duties to ADC.

Under the circumstances, Plaintiffs' first, fourth and fifth claims of relief should be dismissed to the extent Plaintiffs purport to assert them against Noble.

D. **PLAINTIFFS' FIRST CLAIM FOR RELIEF DOES NOT STATE A CLAIM AGAINST JONNA KOEHN, TROY PARKE AND BRET COPPES.**

As with the breach of contract claim (first claim for relief) against Noble, Plaintiffs cannot state a claim for breach of contract against Jonna Koehn, Troy Parke and Bret Coppes.

Plaintiffs allege that "Defendants entered into an Agreement with ADC to maintain the confidentiality of ADC's proprietary information and trade secrets." [*Id.*, ¶ 94]. Somehow, this *single* purported "agreement" is identified by Plaintiffs as both (a) "a confidentiality and noncompete agreement" signed by Mark Winterman *and* (b) a (separate) "agreement" signed by Mark Winterman, Diana Coates, Aaron Picton, Bryan Parke and Colby Brown "requiring them to maintain in perpetuity the confidentiality of ADC's trade secrets and confidential information." [*Id.*, ¶ 33].

Setting aside the apparent inconsistencies in these allegations, Plaintiffs do not allege that *Jonna Koehn, Troy Parke or Bret Coppes* ever executed the purported confidentiality "agreement" with ADC. Nevertheless, it is on the basis of this "Agreement" (and no other) that Plaintiffs have asserted a claim for breach of contract (first claim for relief). [*Id.*, ¶¶ 93-96].

Because the existence of a contract is an indispensable element of a breach of contract claim, *Blair*, 20 P.3d at 392, and because Plaintiffs do not allege that Jonna Koehn, Troy Parke or Bret Coppes, or any of them, were a party to the "agreement" upon which the first claim for relief is based, Plaintiffs cannot state a claim for breach of contract as to these Defendants.

Accordingly, Plaintiffs' first claim for relief should be dismissed to the extent that Plaintiffs purport to assert that claim against Jonna Koehn, Troy Parke and Bret Coppes.

## V.   CONCLUSION

For all of the reasons set forth above, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants respectfully submit that the Court should dismiss Plaintiffs' third, fourth, eighth and ninth claims for relief in their entirety and that the Court further dismiss Plaintiffs' first, third [*sic*], fourth, sixth and seventh claims for relief, in whole or in part, as appropriate.

DATED THIS 18th day of December, 2013.

                                      PARSONS BEHLE & LATIMER


                                      By */s/ Kennedy K. Luvai*
                                          John N. Zarian
                                          Kennedy K. Luvai
                                  Attorneys for Defendants Noble Software Group
                                  LLC, Mark Winterman, Aaron Picton, Bryan
                                  Parke, Troy Parke, Jonna Koehn, Colby Brown,
                                  Diana Coates and Bret Coppess

CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on the 18th day of December, 2013, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will automatically send email notification of such filing to all counsel who have entered an appearance in this action.

                                        */s/ Kennedy K. Luvai*
                                        Kennedy K. Luvai